NOT FOR PUBLICATION                                          (Doc. No. 59)

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY
## CAMDEN VICINAGE

| | | |
|---|---|---|
| FREDERIC K. BERMAN and SANDRA BERMAN, | : : : | |
| Plaintiffs, | : : | |
| v. | : : | Civil No. 12-7705 (RBK/JS) |
| ADT LLC, et al., | : : | **OPINION** |
| Defendants. | : : : | |

**KUGLER**, United States District Judge:

This matter comes before the Court on the Motion of Defendant ADT LLC, f/k/a ADT

Security Services, Inc. ("ADT"), for Summary Judgment pursuant to Fed. R. Civ. P. 56.  (Doc.

No. 59.)  The subject of this motion is Plaintiffs Frederic ("Mr. Berman") and Sandra ("Mrs.

Berman") Berman's (collectively "Plaintiffs") Complaint, in which they allege that ADT

violated the New Jersey Consumer Fraud Act by failing to provide alarm protection Plaintiffs

claim they were promised.   For the reasons stated herein, Defendant's Motion will be granted.

## I.     FACTUAL AND PROCEDURAL BACKGROUND[1]

This suit arises out of a security system contract between Plaintiffs and ADT.  Plaintiffs

allege that ADT misrepresented included equipment in their residential security system by

promising the same system previously installed in Plaintiffs' business.  Plaintiffs claim that a

---

[1] When considering a defendant's motion for summary judgment, the Court views the facts underlying the claims in the light most favorable to the non-moving party.  See Petruzzi's IGA Supermarkets, Inc. v. Darling-Delaware Co., Inc., 998 F.2d 1224, 1230 (3d Cir. 1993).

crucial shortcoming in the residential system allowed burglars to break into their home, assault

them, damage property, and steal their valuables.  ADT contends it installed the exact security

system for which Plaintiffs negotiated and contracted.

      Plaintiffs reside and own a jewelry store in Cherry Hill, New Jersey.  (Second Am.

Compl. ("SAC") ¶¶ 1, 41.)  In February 1997, Plaintiffs entered into a contract ("Business

Contract") with ADT's predecessor-in-interest, Holmes Protection Services, Inc. ("Holmes"), to

install a security system in their jewelry store.  (ADT's SMF ¶ 7; Pls.' SMF ¶ 1.)[2]  Three months

later, Holmes Senior Security Representative Michael Hanney sent Plaintiffs a proposal

("Residence Proposal") dated May 15, 1997 for a security and fire alarm system in Plaintiffs'

home.  (ADT's SMF ¶ 12; Pls.' SMF ¶ 2.)  Mr. Hanney concluded the Residence Proposal with a

"System Overview" explaining:

> The new DMP 1912XR Security/Fire System is the same system
> installed in your business.  It will expand your home protection from
> the current two (2) zones to over twenty (20) zones individually
> annunciated on each of the new DMP Keypads as well as at our
> Central Station.  If you have any questions, please give me a
> call . . . .  (Ex. 8 to ADT's Br., Residence Proposal ("Residence
> Proposal").)

Mr. Hanney also met Mr. Berman at Plaintiffs' residence in May 1997 to inspect the premises.

(Pls.' SMF ¶ 10 (citing Ex. 4 to ADT's Br., Frederic Berman's Answers to Def.'s Second Set of

Interrogs., Interrog. 1).)  He told Plaintiffs they would be receiving "the same system in the

house as [they] had in the store."  (Id.)[3]

---

[2] To the extent that the parties agree on a particular fact the Court will cite to ADT's Statement of Undisputed
Material Facts ("ADT's SMF") and Plaintiffs' Supplemental Statement of Disputed Materials Facts ("Pls.' SMF").
Otherwise, the Court will rely on the record to fill in the details of this case.

[3] ADT disputes Plaintiffs' assertion that Holmes orally represented that the residential system would be the "same
system" as the jewelry store system, correctly indicating that in their SAC, Plaintiffs merely allege that Holmes only
made this representation in writing.  (ADT's Resp. to Pls.' SMF ¶ 10 (citing SAC).)  However, for summary
judgment purposes, the Court must accept the nonmoving party's evidence.

Mrs. Berman reviewed the Residence Proposal's details and made handwritten notes regarding additional equipment, installation cost, the monitoring service, and a negotiated parts guarantee.  (ADT's SMF ¶ 16.)  Mrs. Berman "wanted to make sure these particular items were included and covered for in the alarm system," and her handwritten notes reflect her discussion with Mr. Hanney.  (Id. ¶ 16-17.)  Following this discussion, Plaintiffs executed a contract ("Residence Contract") with Holmes for security and fire alarm services at their home.  (Id. ¶ 18.)  Other than Mrs. Berman's negotiated revisions, the alarm equipment included in the Residence Proposal and Residence Contract was identical.  (Id. ¶ 19.)  The Residence Contract stated:

> This writing . . . is intended by the parties as the final expression of their agreement with respect to the subject matter contained herein and also as the complete and final statement of the terms of such agreement, notwithstanding any prior, contemporaneous or subsequent written or oral agreement relating to said subject matter. . . . If subscriber desires that company to provide any additional services other than as set forth herein[,] then any such additional services shall only be furnished pursuant to a separate agreement.

(Ex. 10 to ADT's Br., Residence Contract ("Residence Contract").)

The Business Contract, Residence Proposal, and Residence Contact all itemized included equipment.  (ADT's SMF ¶¶ 8, 13, 22.)  All three included "One (1) DMP 1912XR Control [Panel]" and specific models of DMP keypads, modules, and burglar alarm zone expanders.  (Ex. 6 to ADT's Br., Business Contract ("Business Contract"); Residence Proposal; Residence Contract.)  While the Business Contract included "One (1) Sound Discriminator," which detects breaking glass, neither the Residence Proposal nor the Residence Contract referenced this item.  (Business Contract; Residence Proposal; Residence Contract.)  The Business Contract also included other equipment absent from the Residence Proposal and Residence Contract,

including, for example, "Five (5) Panic Buttons," "One (1) EVD Control," and "Four (4) EVD Pick-Ups."  (Business Contract; Residence Proposal; Residence Contract.)

The business and residential security systems also differed in that Plaintiffs separately contracted with a different company for greater monitoring protection in their jewelry store. (ADT's SMF ¶¶ 10, 28.)  Plaintiffs executed a radio back-up monitoring service agreement with Lydia Security Monitoring, Inc., d/b/a COPS Monitoring, in March 1997, prior to receiving the Residence Proposal from ADT.  (Id. ¶ 10.)

Nearly fifteen years after Plaintiffs executed the Residence Contract with Holmes, on February 7, 2012, burglars broke into Plaintiffs' home by smashing through a sliding glass door. (Pls.' SMF ¶ 16.)  No signal was sent to the ADT monitoring station because Mrs. Berman had not armed the alarm system when she arrived at home prior to the burglars' entry.  (ADT's SMF ¶ 4; Ex. 3 to ADT's Br., Sandra Berman's Resp. to Req. for Admiss., Resp. 2.)  The burglars bound Mrs. Berman, waited several hours for Mr. Berman to return home from work, and forced him by threat of injury to him and his wife to open a safe in the garage.  (ADT's SMF ¶ 2.)  As a result of the burglary, Plaintiffs sustained physical and emotional injury and disability, incurred medical expenses, and suffered loss of property valued in excess of $500,000.  (SAC ¶¶ 22, 30.)

On November 9, 2012, Plaintiffs filed a Complaint in the Superior Court of New Jersey, Camden County, against the following defendants: Holmes Protection Group, Inc.; ADT LLC; Tyco International, Inc.; Tyco International, Ltd.; John Does 1–10; John Does 11–20; ABC Corporation; and XYZ Partnership. Plaintiffs then dismissed the claims against Tyco International, Inc. and Tyco International, Ltd.  (Notice of Removal (Doc. No. 1) ¶¶ 1, 3.)  On December 18, 2012, Defendant removed this case pursuant to 28 U.S.C. § 1446, invoking this Court's jurisdiction under 28 U.S.C. § 1332 and § 1367.  (Id. ¶ 4.)

ADT filed its first Motion to Dismiss on December 26, 2012.  (Doc. No. 3.)  On January 17, 2013, Plaintiffs filed an Amended Complaint, which the Defendant moved to dismiss on February 11, 2013.  (Doc. Nos. 7, 11.)  Plaintiffs then filed a Motion to Amend/Correct their Amended Complaint.  (Doc. No. 14.)  Because the motion was unopposed, the Court granted Plaintiffs' motion, and Plaintiffs filed the SAC.  (Doc. No. 23.)  They then re-filed the SAC twice due to Plaintiffs' omission of certain exhibits.  (See Doc. Nos. 26, 28.)  The SAC is the operative complaint in this matter.

Plaintiffs allege four claims against ADT in their SAC.  The parties jointly stipulated to the dismissal of Count I, Breach of Contract.  (Doc. Nos. 51-52.)  On December 13, 2013, the Court granted ADT's Motion to Dismiss Count II, Breach of Express and Implied Warranties, and Count III, Willful and Wanton Misconduct and Negligence, and denied ADT's Motion to Dismiss Count IV, Violation of the New Jersey Consumer Fraud Act.  (Doc. No. 41.)

On December 31, 2014, ADT filed the present Motion for Summary Judgment on Plaintiffs' remaining New Jersey Consumer Fraud Act claim.  (Doc. No. 59.)  For the reasons set forth below, the Court will grant ADT's Motion.

## II.    LEGAL STANDARD

The Court should grant a motion for summary judgment when the moving party "shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  An issue is "material" to the dispute if it could alter the outcome, and a dispute of a material fact is "genuine" if "a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) ("Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party,

5

there is no 'genuine issue for trial.'") (quoting <u>First Nat'l Bank of Az. v. Cities Serv. Co.</u>, 391 U.S. 253, 289 (1968)).  In deciding whether there is any genuine issue for trial, the court is not to weigh evidence or decide issues of fact.  <u>Anderson</u>, 477 U.S. at 248.  Because fact and credibility determinations are for the jury, the non-moving party's evidence is to be believed and ambiguities construed in its favor.  <u>Id.</u> at 255; <u>Matsushita</u>, 475 U.S. at 587.

Although the movant bears the burden of demonstrating that there is no genuine issue of material fact, the non-movant likewise must present more than mere allegations or denials to successfully oppose summary judgment.  <u>Anderson</u>, 477 U.S. at 256.  The nonmoving party must at least present probative evidence from which the jury might return a verdict in his favor.  <u>Id.</u> at 257.  The movant is entitled to summary judgment where the non-moving party fails to "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

## III.    DISCUSSION

The New Jersey Consumer Fraud Act ("NJCFA" or the "Act") is "designed to promote the disclosure of relevant information to enable . . . consumer[s] to make intelligent decisions in the selection of products and services."  <u>Belmont Condo. Ass'n v. Geibel</u>, 74 A.3d 10, 27 (N.J. Super. Ct. App. Div. 2013) (quoting <u>Div. of Consumer Affairs v. Gen. Elec. Co.</u>, 582 A.2d 831, 833 (N.J. Super. Ct. App. Div. 1999)).  Accordingly, the Act enables victims to be compensated for their actual loss and violators to be punished by awarding victims mandatory punitive treble damages, reasonable attorneys' fees, filing fees, and reasonable costs of suit.  N.J. Stat. Ann. § 56:8–19; <u>Lettenmaier v. Lube Connection, Inc.</u>, 741 A.2d 591, 593 (N.J. 1999); <u>Garcia v. L & R Realty, Inc.</u>, 790 A.2d 936, 942 (N.J. Super. Ct. App. Div. 2002).

6

To make out a prima facie case under the NJCFA, a plaintiff must present evidence of (1) an unlawful practice by the defendant, (2) an ascertainable loss by the plaintiff, and (3) a causal relationship between the unlawful conduct and the ascertainable loss.  § 56:8–19; Int'l Union of Operating Eng'gs Local No. 68 Welfare Fund v. Merck & Co., Inc., 929 A.2d 1076, 1086 (N.J. 2007).  An unlawful practice is:

> The act, use or employment by any person of any unconscionable commercial practice, deception, fraud, false pretense, false promise, misrepresentation, or the knowing, concealment, suppression, or omission of any material fact with intent that others rely upon such concealment, suppression or omission, in connection with the sale or advertisement of any merchandise[4] . . . .

§ 56:8–2.  Thus, unlawful practices are divided into three categories: affirmative acts, knowing omissions, and regulatory violations.  Cox v. Sears Roebuck & Co., 647 A.2d 454, 462 (N.J. 1994).  If the alleged violation entails an affirmative act, the plaintiff has no burden to prove that the defendant intended the unlawful practice.  Id.  For knowing omissions, however, intent is an essential element.  Id.

**A. Plaintiffs Have Not Demonstrated the Alleged Misrepresentation Was Material**

Plaintiffs argue that Holmes's statement that it would provide the same system in Plaintiffs' residence as it had previously provided in their jewelry store amounts to an affirmative misrepresentation, constituting an unlawful practice under the NJCFA.  (Pls.' Br. 6.)  Even viewing the facts as favorably to Plaintiffs as the record permits, the Court disagrees.

When a plaintiff alleges an affirmative misrepresentation, the NJCFA covers oral misrepresentations to the same extent as written misrepresentations.  Gupta v. Asha Enters., L.L.C., 27 A.3d 953, 959 (N.J. Super. Ct. App. Div. 2011) (citing Chattin v. Cape May Greene,

---

[4] "Merchandise" includes "any objects, wares, goods, commodities, services or anything offered, directly or indirectly to the public for sale."  § 56:8–1(c).

Inc., 524 A.2d 841, 853 (N.J. Super. Ct. App. Div. 1987), cert. denied, 526 A.2d 209 (N.J. 1987)).  However, not just any erroneous statement constitutes an unlawful practice under the NJCFA.  Gennari v. Weichert Co. Realtors, 691 A.2d 350, 366 (N.J. 1997).  The affirmative misrepresentation must be (1) a material statement of fact; (2) found to be false; and (3) made to induce the buyer to make the purchase.  Id.

A statement is material if (a) a reasonable person would attach importance to its existence in determining a choice of action, or (b) the maker of the representation knows or has reason to know that its recipient regards or is likely to regard the matter as important in determining his choice of action, although a reasonable man would not so regard it.  Ji v. Palmer, 755 A.2d 1221, 1228 (N.J. Super. Ct. App. Div. 2000) (citing Restatement (Second) of Torts § 538(2)).

"[I]dle comments or mere puffery" are not material because reasonable consumers do not rely on puffery.  Gennari, 691 A.2d at 366; Hammer v. Vital Pharm., Inc., Civ. No. 11-4124, 2012 WL 1018842, at *6-8 (D.N.J. Mar. 26, 2012) ("The distinguishing characteristics of puffery are vague, highly subjective claims as opposed to specific, detailed factual assertions.") (citation omitted).  In Jacobsen Diamond Ctr., LLC v. ADT Sec. Servs., for example, the court granted summary judgment to ADT because its representation that it would install a "state of the art" system in plaintiff's jewelry store was not sufficiently material to be an unlawful practice under the NJCFA even though it was erroneous.  Civ. No. L-1177-12, 2014 LEXIS 1270, at *16-17 (N.J. Super. Ct. Law. Div. June 3, 2014).[5]

---

[5] The Jacobsen court also held that the plaintiff jewelry store's other allegations of NJCFA unlawful practices—the security system's failure to properly perform during three burglary incidents and the defendant's replacement of the contracted for backup radio with an inferior model—were "rooted in the provisions memorialized in the parties' contract," and therefore amounted to unmet contractual expectations that are unactionable under the NJCFA. Jacobsen, 2014 LEXIS 1270 at *15-16; see also Joy Sys. v. ADT Sec. Servs., Inc., Civ. No. 07-3579, 2008 WL 682232 (D.N.J Mar. 7, 2008) (granting defendant ADT's motion to dismiss the plaintiff's NJCFA claim because the alleged unlawful practices of failing to provide contracted for security services only amounted to a breach of contract, which falls short of a valid claim under the NJCFA).  ADT analogizes to both Jacobsen and Joy Systems, arguing that in this case Plaintiffs' claim that ADT failed to install a sound discriminator amounts to failed

Here, Holmes's statement that it would provide the same system in Plaintiffs' residence as it had installed in Plaintiffs' business is not puffery. Unlike the vague, subjective nature of the "state of the art" promise in Jacobsen, a statement that two security systems are the same is verifiable as a factual assertion.[6] A reasonable consumer may attach importance to receiving the same system for which she had previously contracted but is not wooed by intangible and comparative marketing clichés like "state of the art."

However, that is not the end of the matter. A statement that transcends sales puffery may not be material even when a reasonable consumer would attach importance to it. Ziets v. Swim-Mor Pools & Spas, Civ. No. A-2568-07T3, 2009 WL 972604, at *4 (N.J. Super. Ct. App. Div. Apr. 13, 2009). In Ziets, the court reversed the imposition of NJCFA liability because, even though the defendant pool installation contractor's misrepresentation relating to the pool's height would be important to a reasonable person, it did not affect the plaintiff homeowners' decision-making, and was therefore not sufficiently material. Id. The court found the record to be barren of any proof that the defendant's promise to consult with the plaintiffs before fixing the pool's height influenced the plaintiffs' decision to contract with the defendant. Id. Because the plaintiffs did not meet their burden of proving the materiality of the affirmative representation, they failed to demonstrate an unlawful practice under the NJCFA. Id.

---

contractual expectations. (See ADT's Br. 7-9; ADT's Reply 3.) While the court finds Plaintiffs' allegation of unlawful practice deficient on other grounds, the Court agrees with Plaintiff that its NJCFA claim is not subsumed by a breach of contract claim. (See Pls.' Br. 7-8.) Unlike both Jacobsen and Joy Systems, the deficient equipment here is not included in the contract. This precludes granting summary judgment on the basis that unmet contractual expectations are unactionable under the NJCFA.

[6] The Court notes however that this factual verifiability depends upon a common understanding of the term "system." "System" in the context of the Residence Proposal is ambiguous. It is unclear whether it is most properly understood as the base control panel model or the entirety of all installed equipment. While the Residence Proposal's language that "[t]he new DMP 1912XR Security/Fire System is the same system installed in your business" suggests the former, Plaintiffs also assert that Mr. Hanney made a similar oral representation without reference to the DMP control panel model. Therefore, while this fact is not material to this case's outcome, it is genuinely disputed between the parties.

The record here is similarly barren of any proof that Plaintiffs believed that receiving the same security system, or, by implication, a sound discriminator, in their home as they did in their jewelry store was material to their decision-making.  Mrs. Berman specifically reviewed the Residence Proposal's itemized equipment, which did not include a sound discriminator, and engaged with the document enough to negotiate additional equipment and cost before Plaintiffs agreed to the terms of the Residence Contract.  Plaintiffs also did not separately contract with COPS Monitoring for radio back-up monitoring service in their residence as they had in their jewelry store just two months prior.  Thus, Plaintiffs believed it to be at least important, and possibly even material, to receive a <u>different</u> system in their residence.  There is likewise no evidence in the record that Plaintiffs' belief that their residential system included a sound discriminator affected their decision to contract with Holmes in May 1997.[7]

In sum, Plaintiffs do not cite a single case where a successful NJCFA claimant premises unlawful conduct upon an affirmative misrepresentation while failing to establish the materiality of the misrepresentation.[8]  Because Plaintiffs fail to prove the materiality of Holmes's statement that it would provide the same system in Plaintiffs' residence as it had previously provided in their jewelry store, they are unable to demonstrate an unlawful practice resulting from an

---

[7] Furthermore, the evidence in the record is vague as to when Plaintffs even became aware of the sound discriminator in their jewelry store system.  (<u>See</u> Pls.' SMF ¶ 13 (citing Ex. 2 to Pls.' Br., Scott Boyell Dep. 31:15-32:7, 33:2-5); <u>see also</u> Ex. 3 to Pls.' Br., Frederic Berman Dep. 103:23-104:9 ("[The residential system] also had Glass Breakers, or they called them something else, like if the glass was broken, . . . which I had seen work previously.  We had an alarm once that . . . the glass was broken, but it . . . turned out that it wasn't broken.").)  Without clear evidence of this awareness prior to signing the Residence Contract, Plaintiffs cannot establish that the inclusion of a sound discriminator was material to their decision to contract with Holmes for their residential security system.

[8] Plaintiffs confusingly quote a passage from <u>Solo v. Bed Bath & Beyond, Inc.</u>, which purportedly states, "It is, in short, enough to state unlawful conduct under the NJCFA, that the statement is not actually accurate and was made in connection with the sale of merchandise." (Pls.' Br. 7.)  Beside the fact that this precise passage appears to be nonexistent in <u>Solo</u> (or any other case for that matter), the case is inapposite.  <u>Solo</u> discusses a plaintiff's inability to establish the second and third element of a NJCFA claim, ascertainable loss and causation, within the context of a motion to dismiss.  <u>See generally Solo</u>, Civ. No. 06-1908, 2007 WL 1237825 (D.N.J. Apr. 26, 2007).

affirmative misrepresentation. The Court therefore need not consider the second and third elements of an affirmative misrepresentation, falsity and inducement.

### B. Holmes's Representation is Inadmissible Under the Parol Evidence Rule

Even if Plaintiffs met their burden of demonstrating the materiality of Holmes's representation, the statement is inadmissible under the parol evidence rule. According to the rule:

> When two parties have made a contract and have expressed it in a writing to which they have both assented as the complete and accurate integration of that contract, evidence, whether parol or otherwise, of antecedent understandings and negotiations will not be admitted for the purpose of varying or contradicting the writing.

Filmlife, Inc. v. Mal "Z" Ena, Inc., 598 A.2d 1234, 1235 (N.J. Super. Ct. App. Div. 1991) (quoting 3 Corbin on Contracts § 573 (1960)). Introduction of extrinsic evidence to prove fraud, including a violation of the NJCFA, is an exception to the rule because "it is not offered to alter or vary express terms of a contract, but rather, to avoid the contract or 'to prosecute a separate action predicated upon the fraud.'" Filmlife, 598 A.2d at 1235-36 (quoting Ocean Cape Hotel Corp. v. Masefield Corp., 164 A.2d 607, 611 (N.J. Super. Ct. App. Div. 1960)). However, the fraud exception is limited to matters "extraneous to the writing." Filmlife, 598 A.2d at 1236. The Filmlife court held that the plaintiffs attempted to vary the contracting parties' intent by introducing extrinsic evidence expressly contradicted by the contract and therefore affirmed the evidence's inadmissibility. Id. at 1237.

Still, even when extrinsic evidence directly conflicts with a complete and integrated contract, a misrepresentation may be actionable under the NJCFA if a contracting party, presented with a written contract by the other party, justifiably relies on the misrepresentation.

<u>Kalathia v. PMM, Inc.</u>, Civ. No. A-1616-09T1, 2010 WL 4156769, at *2-3 (N.J. Super. Ct. App. Div. Oct. 25, 2010).  The reliance is justifiable when the falsity of the representation is not obvious to one with the plaintiff's knowledge and intelligence in light of the attending circumstances.  <u>Id.</u>  In <u>Kalathia</u>, the defendant dating service misrepresented that the plaintiff could cancel within three days his nearly $5,500 agreement, in direct conflict with the unilaterally prepared complete and integrated contract stating that there was "no provision for . . . cancellation."  <u>Id.</u> at *1.  The defendant also induced the plaintiff with a one-time only $1,000 discount.  <u>Id.</u>  The court affirmed treble damages under the NJCFA because a consumer in the plaintiff's circumstances would be induced by the discount and justifiably rely on the three-day cancellation misrepresentation, reducing the need to read the contract and making the conflicting term less obvious.  <u>Id.</u> at *3.

The oral and written statements by Mr. Hanney that Holmes would provide the same system in Plaintiffs' residence as it had previously installed in their business is inadmissible. The fraud exception to the parol evidence rule is inapplicable here because, as in <u>Filmlife</u>, the representation is not extraneous to the complete and integrated contract.  The "same system" statement is directly contradicted by the itemized features listed on the first page of the Residence Contract, which incorporates Mrs. Berman's negotiated equipment.  The <u>Kalathia</u> exception is also inapplicable.  First, the Residence Contract was a product of negotiation, rather than a boilerplate unilaterally prepared by the more sophisticated party, as in <u>Kalathia</u>.  Second, even assuming the falsity of Holmes's "same system" representation—which presupposes that "system" refers to the entirety of equipment installed—Plaintiffs' reliance on it is not justified. In light of the attending circumstances—the clarity of the equipment itemization on the Residence Proposal, Mrs. Berman's review of the Residence Proposal's equipment and

12

negotiated add-ons, and Plaintiffs' experience with contracting for security systems, including separately contracting for COPS Monitoring for greater protection in the jewelry store—the falsity of the "same system" statement would be obvious to consumers with Plaintiffs' sophistication.  This contrasts with the <u>Kalathia</u> plaintiff, induced by a discount and false promise for a cancellation window in conflict with the terms of a contract that few in his circumstances would feel the need to read.  Therefore, even disregarding Plaintiffs' failure to establish materiality, the extrinsic evidence they rely upon to prove an unlawful practice is inadmissible.

Because Plaintiffs cannot establish unlawful conduct, the Court need not address the second and third elements of their NJCFA claim, ascertainable loss and causation.

## IV.    CONCLUSION

For the reasons expressed above, Defendant's Motion for Summary Judgment will be **GRANTED**.  An accompanying Order shall enter.


Dated:   7/22/2015                                          s/ Robert B. Kugler
                                                          ROBERT B. KUGLER
                                                          United States District Judge

13